(78 South. 574)

No. 22840.

RAINES et al. v. DUNSON et al.

(Oct. 29, 1917, and April 1, 1918. Rehearing Denied April 29, 1918.)

*(Syllabus by Editorial Staff.)*

On Motion to Dismiss Appeals.

1. APPEAL AND ERROR ☞801(1)—MOTION TO DISMISS—QUESTION OF FACT.

On motion to dismiss appeals on the ground that the judgment appealed from had been ac-

143 LA.—11

quiesced in by plaintiffs by partial execution thereof, presenting a question of fact on the letters annexed to the motion and the denial of their effect, the cause will be remanded to the court below to take testimony on the question, and the consideration of the case would be continued until such evidence was taken and filed.

*(Syllabus by the Court.)*

On Motion to Dismiss Appeals.

2. APPEAL AND ERROR ☞162(1)—"ACQUIESCENCE IN JUDGMENT."

The receipt by the appellant of a portion of the amount decreed to him by a judgment is acquiescence in the judgment and defeats an appeal.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Acquiescence in Judgment.]

3. APPEAL AND ERROR ☞162(1)—ACQUIESCENCE IN JUDGMENT—RESERVATION.

The acquiescence is not affected because the appellant, receiving part of the amount of the judgment, undertakes to reserve his appeal. The reservation cannot avoid the effect the law attaches to the acquiescence in the judgment.

O'Niell, J., dissenting.

Appeal from First Judicial District Court, Parish of Cáddo; J. R. Land, Judge.

Separate actions by D. H. Raines and by Joe Herndon against C. E. Dunson and others. Judgment for defendants, dismissing the two actions, and plaintiffs in each action appeal, and R. T. Layne, styling himself an "intervener," seeks general relief. Appeals dismissed, and intervener denied any relief.

Barret & Files, of Shreveport, for appellants. Alexander & Wilkinson, of Shreveport, for appellees. Barret & Files, of Shreveport, and Blanchard & Smith, of Shreveport, for R. T. Layne.

On Motion to Dismiss Appeals.

SOMMERVILLE, J. The two plaintiffs, in separate actions, sued the defendants for the cancellation of two certain mineral leases of ground located in the parish of Caddo. These two cases were subsequently consolidated, and tried together. There was judgment in favor of the defendants, dismissing

the two suits of the plaintiffs; and plaintiffs have appealed.

[1] The defendants now move to dismiss the appeal on the ground that the judgment appealed from has been acquiesced in by the plaintiffs, by a partial execution thereof, and they annex to their motion copies of letters, addressed by the plaintiffs to the defendants, which authorize a dismissal of the appeal. Plaintiffs have answered the motion to dismiss, and set up that the letters referred to by plaintiffs have been recalled, and allege that there has been no acquiescence, in whole or in part, in the judgment appealed from by them.

There is thus presented a question of fact upon which evidence will have to be taken before a proper disposition of the case may be made.

It is therefore ordered that this case be remanded to the First judicial district court for the parish of Caddo for the purpose of taking testimony upon the alleged acquiescence by plaintiffs in the judgment appealed from, and consideration of the case is continued until such evidence is taken and filed.

### On Motion to Dismiss Appeals.

The motion to dismiss the appeals in these consolidated cases is based on the alleged partial acquiescence by plaintiffs in the two judgments appealed from by them, as evidenced by copies of letters addressed by each plaintiff to C. E. Dunson and S. P. Harrel, two of the defendants, of date September 12, 1917, stating that:

"In consideration of your promise of immediate development I have this day written to my attorneys, Messrs. Barret & Files, authorizing and instructing them to 'dismiss the appeal' in the aforesaid case as soon as the same is lodged in the Supreme Court in so far as same affects the following described land, to wit: [Describing portions of the land involved in these suits and covered in both of the leases from plaintiffs to defendants.] If Messrs. Barret & Files, my attorneys, should through any oversight fail to 'dismiss the said appeal' in so far as the afore-said described lands are concerned, why then this shall be your authority to file in the Supreme Court and have said appeal dismissed, reserving, however, my right to prosecute said appeal in so far as the balance of the said land is concerned; and the release of the aforesaid described land is in no way to be considered or construed as being an acquiescence in the judgment of the lower court."

The two letters were similar in all respects, except as to the descriptions of the lands, and they were signed by the plaintiffs respectively.

Defendants moved to dismiss the appeals of both plaintiffs, and that motion was opposed by plaintiffs, who alleged that their signatures to the two letters had been "obtained through the misrepresentation that it was satisfactory to" their attorneys; "that said letters were recalled and canceled as soon as the facts were presented to said J. H. Herndon and D. H. Raines [plaintiffs], and letters were immediately signed, directed to the attorneys herein, to continue the appeals and to prosecute same to final judgment;" and they attached copies of said letters of date September 26, 1917.

Thereupon an order was issued to take testimony on the alleged acquiescence by plaintiffs in the judgments appealed from. That evidence is now before us.

It appears that plaintiffs are colored men, who own separate tracts of land in the oil fields of Caddo parish, which they leased to defendants under leases covering the usual terms of oil leases. One lease was dated October 23, and the other October 27, 1916.

May 30, 1917, plaintiffs entered separate suits against the defendants for the avoidance and annulment of the leases. The cases were consolidated and tried June 26, 1917, and argued and submitted July 9, 1917. Judgments were rendered July 30, 1917, in favor of defendants, and both plaintiffs appealed to this court.

[2] The judgment in each case simply rejected plaintiff's demands, at his cost. The

judgments, in each case, are indivisible, and acquiescence in any part thereof would have the effect of destroying appeals therefrom. Jolley v. Vivian, 131 La. 937, 60 South. 622; Sims v. Jeter, 129 La. 262, 55 South. 877.

On July 25, 1917, after the cases were submitted, and before judgments were rendered, the two plaintiffs entered into two other contracts of lease with R. T. Layne of the lands embraced in the leases with defendants. Layne testified that he knew of the leases to defendants, and that suits were pending for their annulment.

After the judgments were rendered in defendants' favor, they, plaintiffs, without the knowledge of counsel on either side, compromised their differences as to portions of the land in controversy, as is evidenced by the letters of plaintiffs addressed to Messrs. C. E. Dunson and S. P. Harrel, two of the defendants, and copied herein, wherein they refer to an agreement between them and say:

"In consideration of your promise of immediate development I have this day written to my attorneys, Messrs. Barret & Files, authorizing and instructing them to 'dismiss the appeal' in the aforesaid case as soon as same is lodged in the Supreme Court in so far as same affects" portions of the lands involved in the suits.

Both plaintiffs took the witness stand, and testified that they signed the letters addressed to the defendants, authorizing the dismissal of the appeals.

Joe Herndon said that he signed the letters at his home, that they were read over to him, that he understood them, that no false statements were made to him to obtain his signature, and that he had not seen either Dunson or Harrel with reference to the letters. He was not asked if any representation had been made to him that the letters were satisfactory to his attorneys.

The witness further stated that he did not wish to sign the letters recalling and canceling the letters he had written to Dunson and Harrel, but his counsel had said that Mr. Layne could come in and take all of his share of the oil produced, and that he signed the letters recalling the first letters because he was afraid Mr. Layne would take his oil and break him up. He further said that he wanted Mr. Dunson, one of the defendants, to have his land, and that "I wanted quick production on it."

D. H. Raines, the other plaintiff, testified that he read and understood the letters, that he signed them willingly, that no misrepresentation was made to him and that no fraud or persuasion was used to obtain his signatures, that his real purpose in signing was to get immediate development of his property, and that defendants had gone to drilling at once. When asked if he was told that the letter was satisfactory to his attorneys, the witness said that his attorneys were not mentioned.

The evidence is quite conclusive that plaintiffs did not sign the letters addressed to defendants because of an error of fact on their part, or because of any misrepresentation or fraud on the part of defendants. After the judgments against plaintiffs and in favor of defendants had been rendered, they (plaintiffs and defendants) agreed to settle their differences as to portions of the leased lands, so as to have those portions of land developed immediately, and to get possession of oil which might be drained therefrom by other wells in the vicinity.

Plaintiffs thereby acquiesced in part in the judgments against them, defendants are working under the agreement entered into, and plaintiffs have authorized the dismissal of their appeals in so far as portions of the land are concerned.

Having acquiesced in the judgments, which are indivisible, they abandoned their appeals; and the motions to dismiss will be granted.

[3] The reservation made by plaintiffs of the right to prosecute their appeals in so far as portions of the land were concerned, and other declarations to the effect that what they had agreed to concerning certain portions of the land should not be considered or construed as being an acquiescence in the judgment of the trial court, are not binding on this court, and they are without effect.

In the case of Flowers v. Hughes, 46 La. Ann. 436, 15 South. 14, the court said:

"The receipt by the appellant of a portion of the amount decreed to him by the judgment is acquiescence in the judgment and defeats the appeal. C. P. art. 567; [Campbell v. Orillion] 3 La. Ann. 115; [Cobb v. Hynes] 4 La. Ann. 150; [Fluhart v. Golding] 7 La. Ann. 233; [Succession of De Egana] 18 La. Ann. 64; [Stinson v. O'Neal] 32 La. Ann. 947.

"Nor is this acquiescence at all affected because the appellant, receiving part of the amount of the judgment, undertakes to reserve his appeal. The reservation cannot avoid the effect the law attaches to the acquiescence in the judgment. [Succession of De Egana] 18 La. Ann. 64."

In discussing this point in the Succession of De Egana, 18 La. Ann. 59, the court said:

"The party who voluntarily executes, either partially or in toto, a judgment rendered for or against him, or who voluntarily acquiesces in or ratifies, either partially or in toto, the execution of that judgment, is not permitted to appeal from it."

R. T. Layne, the second lessee of plaintiffs' lands, alleges that whatever judgment may be rendered in the case will affect his leases and his rights thereunder, and asks that he be made party plaintiff and appellant herein, and to be permitted to join in and to prosecute the appeals of plaintiffs and appellants. But as the appeals of plaintiffs will be dismissed, and no judgment rendered in the cause, it is useless to consider his application.

The two plaintiffs, appellants, joined by R. T. Layne, calling himself "intervener," now represent "that the defendants and appellees have acquiesced in and recognized the title and ownership of plaintiffs and appellants and the intervener of the property in controversy, and they "pray that said cause be remanded to the district court, that the evidence may be adduced proving the facts alleged herein, and for general relief."

Movers allege that the two plaintiffs leased certain oil lands, hereinbefore referred to, to defendants, and that plaintiffs subsequently leased the same lands to Layne; that subsequent to the appeal defendants sold parts of their leases to the Clarke & Greer Company, Incorporated; that the Clarke & Greer Company, Incorporated, thus became the agents and representatives of defendants, and by their purchase from Fullilove of portions of Layne's leases defendants "recognized and acknowledged the lease contract held by R. T. Layne, intervener herein, and acquired by him from" plaintiffs; and that they "have estopped themselves from contesting the validity of said leases," and they ask that the case be reopened and remanded to take evidence on the point.

The validity of the leases from plaintiffs to Layne was not an issue of the case; they were not in existence at the time of the trial and submission of the cause. They are not in the record. Defendants did not contest their validity, and the subsequent alleged recognition of same by defendants cannot affect the issue before the court, which is the validity of the leases from plaintiffs to defendants.

The motion to remand is denied, and the appeals are dismissed, at plaintiff's costs.

O'NIELL, J., dissents.