### No. 2056.
### Second Circuit Appeal

---

### SIM S. DORKINS v. ALEXANDER MONTGOMERY.

---

(May 28, 1924, Opinion and Decree)
(June 30, 1925, Opinion and Decree on Rehearing.)
(October 6, 1925, Writ of Certiorari to Supreme Court Refused.)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Evidence—Par. 252.**
Parol evidence is not admissible to prove the sale of real estate but it is admissible to show an error or ambiguity in description of plaintiff's deed and to show that plaintiff is claiming land which he does not own.

## ON A REHEARING.

**2. Louisiana Digest—Surveys and Surveyors—Par. 16, 17, 18.**

Where the evidence in a boundary suit shows that plaintiff and defendant are not adjacent land owners, the plaintiff cannot maintain his action to establish a boundary.

(Civil Code, Art. 823 et seq. Editor's note.)

**3. Louisiana Digest—Landlord and Tenant —Par. 17.**

One need not pay rental for land and buildings which he owns.

Appeal from Ninth Judicial District Court of Louisiana, Parish of East Carroll. Hon. F. X. Ransdell, Judge.

There was judgment "dismissing" the prayer of the plaintiff and condemning the defendant to pay the plaintiff $200.00 for the excess of land held by him, and decreeing that the boundary as fixed by the common vendor, C. C. Lewis, and surveyed by the surveyor, to be the proper and true boundary.

Judgment affirmed.

On a rehearing plaintiff's demands were dismissed in full.

C. S. Wyly, of Lake Providence, attorney for plaintiff, appellant.

Jeff B. Snyder, of Tallulah, attorney for defendant, appellee.

PORTER, J. This is a suit to fix the boundaries between two contiguous tracts of land owned by the plaintiff and the defendant, and the petition contains the usual and necessary allegations in such suits, with the additional allegation that the defendant has trespassed on and used since plaintiff's purchase of the land, at least six acres of plaintiff's land and two cabins, the rental value of which is, altogether, $150.00 per year.

The prayer is for the appointment of a surveyor to fix the limits between the two tracts of land, and for judgment against the defendant for the rental value of the six acres of land and the cabins, as above stated.

The defendant answered and admitted a number of the allegations in plaintiff's petition, as modified by paragraphs 7, 8, 9, 10 and 11 of the answer. He denied the allegation in the petition to the effect that no boundary had been fixed between the two tracts of land, and averred that, on the contrary, the said line separating the two tracts had been fixed, agreed upon, determined and marked as fully set forth in paragraphs to follow. He denied that he had encroached upon defendant's land, or that he owed him anything for rent for land or cabins.

The paragraphs in the answer which present the issues upon which the case was tried and decided in the lower court are as follows:

7.

"Further answering, respondent says and avers that about the 18th day of January, 1915, respondent entered into negotiations with C. C. Lewis, then the owner of all the land now owned by respondent, as well as the land owned by plaintiff, to purchase from said Lewis a tract of land of about forty acres, more or less; that in the company with said C. C. Lewis, the owner, and with F. D. Bull, a competent land surveyor, and the parish engineer of East Carroll parish, your respondent did visit the land now owned and occupied by respondent; that said Lewis pointed out to respondent and to said Surveyor Bull a certain telegraph post along the line of M. H. & L. R. R. Company, and said: 'The south line of the forty acres I propose to sell you is about on an east and west line drawn through the center of this telegraph post; I know my north boundary and have ascertained the boundary of the quarter section I propose to sell you by counting the telegraph posts and taking the distance as shown by them from my north boundary; but it may be, and probably is, that this

distance is not precisely accurate; there fore, it will be understood between us that while my deed to you will convey to you the northeast quarter of the north-west quarter of Section 71 T. 20, R. 13, yet this east and west line drawn through the center of this telegraph post shall be your southern boundary; it may run a few acres over, or a few acres under the forty acres for which you are to pay me, and whenever a survey is made, if there is an overplus, you are to pay me for it at the same rate per acre for which I am selling this to you, and if the survey shows less than forty acres ·north of this telegraph post line, then I will refund to you at the same price per acre for the decreased quantity.'

"Respondent shows that he accepted, agreed upon, determined, and fixed with said C. C. Lewis said southern boundary of said forty-acre tract as above set forth.

8.

"Respondent further shows that later on, to-wit, in the latter part of the month of October, 1917, in the meantime, some three years, he and his said vendor, C. C. Lewis, having scrupulously observed and lived up to the boundary fixed as above set forth), plaintiff herein, Sim S. ˙Dor-kins, applied to said Lewis to purchase sixty acres of land juŝt below and ad-joining respondent's purchase; that said Lewis refused to sell to said plaintiff and plaintiff applied to respondent to induce and persuade said Lewis to sell to him; that respondent wrote to said Lewis, urging him to sell the land to plaintiff, and really made the trade between plain-tiff and said Lewis; that at the time said trade was consummated, said Lewis in-formed said plaintiff of the determining and fixing of the limits of the respon-dent's lower line and stated to him the agreement between respondent and said Lewis; that is to say, that if his survey showed more than forty acres in respon-dent's tract, with the south line fixed as above set forth, respondent would pay for the excess, and if it showed less, the price for the diminished portion would be returned to respondent, and said Sim S. Dorkins, plaintiff herein, agreed with and assured said Lewis and respondent that he would accept, and he did accept, the fixing and determining of respondent's

south line based on said telegraph post, and· promised and obligated himself that if a survey showed that the land de-scribed in the deed to said Lewis to re-spondent did not quite come down to said telegraph post, that he, said Dor-kins, would, upon that fact being deter-mined to convey to respondent the neces-sary land to perfect and carry out the agreement between respondent and said Lewis, as ratified by said plaintiff. Avers that said ratification and obligation was made a condition of the sale by Lewis to plaintiff.

9.

"Respondent avers and shows that he and plaintiff herein abided by and con-sidered as fixed and determined said boundary between them until about July, 1918, when respondent caused Surveyor F. D. Bull to run the lines of his prop-erty, and when said Dorkins, from infor-mation received from him by said sur-veyor, discovered that the lines as run by said Bull ran so far north ˙of said telegraph post as to leave out of the northeast quarter of the northwest quar-ter of said Section 71, respondent's house and another cabin, he, said plaintiff for the first time, attempted to violate said agreement fixing said boundary between them, and seeking to take an unfair ad-vantage of respondent, instigated this suit.

10.

"Respondent further shows that one of the cabins claimed by plaintiff was a cabin situated on land south of the said telegraph post line and on land which is now owned and occupied by said plaintiff, and which said cabin was included in the sale and ˑdelivered to respondent by said Lewis as. an inducement to make the purchase from said Lewis, and was by said Lewis' directions moved by respon-dent˙ from the land then owned by C.ˎ C. Lewis to the. land sold by said Lewis to respondent.

11.

"Respondent further avers and shows that ˙when informed of plaintiff's claims and threats, he has endeavored in every possible manner to have plaintiff carry out his agreement that he and respon-

dent and said Lewis had made at the time of said plaintiff's purchase from said Lewis; that he offered to pay said plaintiff $50.00 per acre, his purchase price from said Lewis, for said excess six acres, which offer said plaintiff refused; that another purchaser from Lewis named Cooper, who owned land just south of and adjacent to and contiguous to Dorkins' tract, acting for and in behalf of respondent, has offered to deed to said plaintiff six acres of his land just south of and adjoining said Dorkins' land, and of equal value thereto, but that said Dorkins has rejected said offer also, and is, in violation of the fixing and determining of boundaries between said Lewis, said plaintiff and himself, endeavoring, because of the situation of the houses on said land, to vex, harass and annoy respondent in the hope that he can compel respondent to pay him a large sum of money under fear of losing his home and his improvements.

12.

"Respondent avers and shows that, acting upon said agreement fixing said boundary, and the acquiescence of all parties thereto, he has been in open, notorious undisturbed and peaceful possession of the land claimed herein by plaintiff, for more than three years prior to the institution of this suit; that the houses on said land claimed by plaintiff constitute his residence and his home, and that he has worked and cultivated the land (six acres) claimed by plaintiff herein, without let or hindrance or adverse claim from anyone for said period of time, plaintiff residing on his own land, close neighbor to respondent, and never asserting any claim to said six acres until the institution of this suit.

"Defendant prays that plaintiff's demand be rejected in toto; that no survey be ordered by the court to fix said limits, because they have been fixed, and boundary lines established in January, 1915, by defendant and said Lewis, his vendor, and said establishment and fixing of boundary was ratified, confirmed and agreed to in all its details by plaintiff in October, 1917; further prays for judgment recognizing said boundary lines as fixed and established as above set forth to be the true boundary between respondent and plaintiff, and that plaintiff be compelled to receive from respondent the sum of $50.00 per acre for the six acres embraced between the south line of the northeast quarter of the northwest quarter of Sec. 71, T. 20, N. R. 13 E., and the east and west line drawn through said telegraph post, all as shown on the plat and survey of said land as made by F. D. Bull, surveyor, which is attached and made part of plaintiff's answer."

There was judgment "dismissing" the prayer of the plaintiff and condemning the defendant to pay the plaintiff $200.00 for the excess of land held by him, and decreeing that the boundary as fixed by the common vendor, C. C. Lewis, and surveyed by the surveyor, to be the proper and true boundary. It is conceded that the amount just above mentioned should have been $300.00, instead of $200.00. From this judgment the plaintiff has appealed.

OPINION

Plaintiff's counsel registered timely objections to any parol testimony for the purpose of contradicting or enlarging the recitals in the deed under which defendant holds. These objections were overruled, and an order was made making the objections general.

The correctness, *vel non*, of this ruling is the sole issue in the case as presented to this court, since it cannot be doubted that, if the said testimony is admissible it fully sustains defendant's contention that it was the intenion of both vendor and himself, at the time the deed was prepared, that his purchase should include all of the land between the northern boundary of the upper quarter and the telegraph post, pointed out by his and the plaintiff's vendor.

If there is a patent or latent ambiguity in the deed, parol testimony is admis-

sible to explain it and to enforce the true intention of the parties.

In Ker et al. vs. Evershed, 41 La. Ann. 15, 6 South. 566, it was said:

"Courts of equity, however, have established a special branch of jurisdiction under which, when it is made clearly to appear that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed or intended to embody therein, such mistake may be corrected, and the writing may be reformed to express the real intention of the parties."

This doctrine has been too firmly established to admit of any question now. The leading case in point is that of Plangue vs. Guesnon, 15 La. 311, which has been many times cited affirmatively from the Succession of Goodrich, 6 R. 109, down to Sims vs. Jeter, 129 La. 266, 55 South. 877.

Mr. Lewis, the common vendor of the plaintiff and the defendant, originally owned the east half of the east half of Section 71, in Township 20, Range 13—one hundred and sixty acres in all. On the 18th of January, 1915, he sold to the defendant the upper, or northern, forty, and on the 29th of October, 1917, he sold to the plaintiff the forty and a half lying south of, and adjoining, the defendant's tract. At the time of the sale to the defendant, there were two or three cabins near, but over the southern quarter section line of defendant's land. The description in the deeds to defendant and to plaintiff—both of which are authentic in form—are as follows:

Defendant's land is described as: "The Northeast Quarter (NE¼) of the Northwest Quarter (NW¼) of Section Seventy-one (71) in Township Twenty (20) North, Range Thirteen (13) East, in the District of Lands North of Red River, Louisi-ana, containing Forty (40) acres, more or less, with all the *buildings* and improvements thereon."

Dorkins' title describes the land purchased by him as follows: "All and singular the following described property with the *improvements* thereon, * * * and designated as being the South East Quarter of the Northwest Quarter of Section Seventy-One, and the North half of the Northeast Quarter of said Section Seventy-One, containing in the aggregate, Sixty acres of land, more or less, in Township Twenty North, Range Thirteen East." Italics ours.

The significance of the fact that in defendant's deed the *buildings* and improvements are specifically mentioned, (and, as we gather from the testimony, there were no buildings on defendant's tract north of the south quarter section line) cannot be ignored, and it certainly indicates a purpose on the part of the vendor to sell enough land to take in the buildings. And the mention of the buildings in defendant's deed becomes more significant in view of the fact that in the description in the plaintiff's deed, executed before the same official, there is no mention of buildings.

We, therefore, think that the deed under which defendant holds is ambiguous to say the least of it, and for that reason the ruling of the trial judge admitting parol testimony to explain it is affirmed.

If we could adopt the theory of plaintiff's able counsel, that defendant's deed is the transfer of a definite quantity of land, and is free from all uncertainty, the authorities which he cites and discusses in his able brief would be binding upon the court, but for the reasons stated, we think the case is within the doctrine of the Planque-Guesnon case, cited above.

The judgment must be amended as to the sum awarded the plaintiff. We un-

derstand that this is conceded by counsel for the defendant. And as it is shown that the plaintiff has paid his vendor, Lewis, for 60 acres of land, in cash and mortgage notes negotiable by delivery, we think that his rights as against Lewis to sue for the deficiency, in case he fails to collect the amount from the defendant, ought to be reserved.

It is, therefore, ordered and decreed that the judgment appealed from be amended by increasing the sum awarded the plaintiff against the defendant, from $200.00 to $300.00, and by reserving whatever rights the plaintiff may have against his vendor, Lewis, for the deficiency in the quantity of land sold him, and that as thus amended, the said judgment be, and it is hereby affirmed. Defendant to pay costs of the lower court and plaintiff the costs of this appeal.

Crow, Judge, absent, takes no part.

---

## ON REHEARING.

ODOM, J. The facts in this case were stated in our former opinion.

Defendant, in answer, sets up in substance, at least, that there is an error in the description of the land sold to plaintiff; that while the description in the deed from Lewis to Dorkins conveys the Southeast quarter of Northwest quarter of Section 71, this description is erroneous, as it was the intention of Lewis to sell and of Dorkins to purchase only so much of the Southeast quarter of Northwest quarter of said Section as extended to an east and west line running through a certain telegraph pole, and that, therefore, the plaintiff does not own the land he claims to own and has no right to have a boundary fixed according to an erroneous description.

On the trial of the case the defendant offered to show by parol testimony that plaintiff's deed contain an erroneous description. Evidence to prove this wrong description was admitted over plaintiff's objection. The lower court held and we hold that parol evidence is admissible to prove a wrong description in a deed.

In the case of Fleming & Baldwin vs. Watson, 26 La. Ann. 547, the court said:

"It was further objected that parol evidence should not have been received to prove an error in the description of the lands sold to Fleming & Baldwin. If that be true, it would be unfortunate indeed, for there could hardly be any other mode to prove a wrong description."

"This is not an attempt to prove by parol a sale of immovable property, nor to contradict a valid existing instrument, but to show that by accident or negligence the instrument in question has not been made the actual depository of the intention and meaning of the contracting parties. Ex necessitate rei, parol evidence should be received. It is on this ground that testimony is let in to prove fraud in every kind of transaction. Cases of error are sometimes kindred to those of fraud and should be governed by the same rules. Is it not an actual fraud to claim an undue benefit and advantage from a mere mistake, contrary to the real intention of the parties to the contract?"

In Planque vs. Guesnon, 15 La. 311, it was held that parol evidence was admissible to show that the description of a lot in a deed was made through error and that the lot actually sold was a different one from that described in the deed.

See: Sims vs. Jeter, 129 La. 266, 55 South. 877.

According to the pleadings in this case, the plaintiff, Dorkins, is claiming that which he knows he does not own, and to that except his attempt to perpetrate a fraud is fully set forth in defendant's answer.

We think parol evidence was admissible to show the error in the description in plaintiff's deed under the circumstances of this case.

We do not hold that parol evidence is admissible to prove the sale of real estate but we hold that in this case it was admissible under the pleadings to show that there was error in the description in plaintiff's deed and to show that he is now claiming land which in fact he does not own.

According to the pleadings and the evidence, Dorkins, the plaintiff, owned only so much of the Southwest quarter of the Northwest quarter of Section 71 as extends up to an east and west line running through a certain telephone pole mentioned in the deeds.

According to the pleadings and according to the testimony for Dorkins to set up claim to any land north of said line is to perpetrate a fraud. The six acres of land between the south line of the NE¼ of NW¼ of Section 71 and the north boundary line of plaintiff's land is owned by Lewis, who of course may make such settlement with Montgomery as he sees fit. Plaintiff and defendant are, therefore, not adjacent proprietors and plaintiff cannot maintain his action to establish boundary.

The judgment of the lower court rejecting plaintiff's demand for the fixing and establishing of the boundary line and our former judgment affirming the same, we think, are correct.

We think, however, that it was error to hold that the defendant should pay plaintiff for the land in dispute for, in so holding, we held that defendant owned the land.

For the reasons assigned, it is now ordered, adjudged and decreed that the judgment of the district court rejecting plaintiff's demand and dismissing his suit, be affirmed, and that our former judgment affirming that judgment to that extent be, and the same is hereby reinstated; and it is further ordered that, in all other respects, the judgment of the district court and our former judgment be set aside, except insofar as our former judgment reserved whatever rights plaintiff may have against his vendor, Lewis, for a deficiency in the quantity of the land sold.

The cost of the proceedings in the lower court to be paid by plaintiff; the cost of the appeal to be paid by defendant.